## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

DEBORAH HAYMAN. et al., individually and
on behalf of all others similarly situated,

               Plaintiffs,

    v.

MASTERCARD, INC.,

               Defendant(s).

Case No. 7:25-cv-00340

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
## <u>CLASS AND COLLECTIVE ACTION SETTLEMENT</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ......................................................................................................... 2

    I.    Plaintiffs' Counsel's Investigation of Class Discrimination
          Claims and Mastercard's Defenses ................................................... 3

    II.   Mediation and Settlement Negotiations Between the Parties ............................ 7

THE LITIGATION ..................................................................................................... 8

THE SETTLEMENT CLASS .......................................................................................... 9

SUMMARY OF THE SETTLEMENT TERMS ................................................................... 10

    I.    Monetary and Programmatic Relief ................................................... 10

    II.   Releases .................................................................................... 12

    III.  Attorneys' Fees And Costs ............................................................ 12

    IV.  Service Payments ....................................................................... 12

    V.   Settlement Claims Administrator ..................................................... 14

CLASS ACTION SETTLEMENT PROCEDURE ................................................................ 14

ARGUMENT .......................................................................................................... 15

    I.    Preliminary Approval of the Class Action Settlement Is Appropriate ............ 15

          A.   Litigation Would Be Risky, Complex, Costly, and Long
               (Factors 1 & 6) ................................................................ 18

          B.   The Reaction of the Class Has Been Positive (Factor 2) ..................... 19

          C.   The Parties Have Exchanged Sufficient Relevant
               Information to Evaluate the Claims and Defenses (Factor 3) .............. 19

          D.   The Risk of Establishing Liability and Damages for the
               Class Through Trial Favors Approval (Factors 4 and 5) ..................... 21

          E.   The Court Should Give Little Weight to Whether Defendant
               Can Withstand a Greater Judgment (Factor 7) ................................ 22

F.      The Settlement Is Substantial, Even in Light of the Best
        Possible Recovery and the Attendant Risks of Litigation
        (Factors 8 and 9) ................................................................. 23

II.     Conditional Certification of the Class Is Appropriate ...................... 24

        A.      Numerosity Is Satisfied......................................................... 24

        B.      Commonality Is Satisfied....................................................... 24

        C.      Typicality Is Satisfied ........................................................... 25

        D.      Adequacy of the Named Plaintiffs Is Satisfied .................... 26

        E.      Certification Is Proper Under Rule 23(b)(3) ........................ 27

                1.      Common Questions Predominate ............................... 27

                2.      A Class Action Is a Superior Mechanism ................. 28

III.    Certification of the EPA Collective Is Appropriate ......................... 29

IV.     Plaintiffs' Counsel Should Be Appointed as Class Counsel............ 29

V.      The Proposed Notice to the Class Is Appropriate .............................. 31

CONCLUSION........................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................ 28

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................... 18, 20, 22

*Brazier v. Real Hosp. Grp., LLC*,
  No. 20 Civ. 8239, 2021 U.S. Dist. LEXIS 254707 (S.D.N.Y. Nov. 12, 2021) ........ 16

*Calibuso v Bank of Am. Corp.*,
  299 F.R.D. 359 (E.D.N.Y. 2014) ........................................................................... 29

*In re Canon United States Data Breach Litig., Nos.*,
  20 Civ. 6239, 2023 U.S. Dist. LEXIS 206513 (E.D.N.Y. Nov. 15, 2023) ......... 29-29

*Capsolas v. Pasta Res., Inc.*,
  2012 U.S. Dist. LEXIS 144651 ............................................................................. 26

*Capsolas v. Pasta Res., Inc.*,
  2012 U.S. Dist. LEXIS 65408 ......................................................................... 26, 29

*Chen-Oster v. Goldman, Sachs & Co.*,
  325 F.R.D. 55 (S.D.N.Y. 2018) ...................................................................... 28, 30

*City of Detroit v. Grinnell Corporation*,
  495 F.2d 448 (2d Cir. 1974) .......................................................................... 17, 18

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ................................................................................... 24

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................................... 18

*Duling v. Gristede's Operating Corp.*,
  No. 06 Civ. 10197 ................................................................................................. 30

*Duling v. Gristede's Operating Corp.*,
  267 F.R.D. 86 (S.D.N.Y. 2010) ............................................................................ 26

*Dziennik v. Sealift, Inc.*,
  No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) .......... 26

*Easterling v. Connecticut, Dep't of Correction*,
   No. 08 Civ. 826 ................................................................................................................ 30

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11 Civ. 8405, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015)......................... 16

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) .................................................................................. 13, 25

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ........................................................................................................... 25

*Goldberg v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ................................................................................................ 17

*Gonzalez v. Pritzker*,
   No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277 (S.D.N.Y. Sep. 20, 2016)....................... 30

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) .............................................................................................. 28

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................................................... 17

*Hernandez v. Immortal Rise, Inc.*,
   306 F.R.D. 91 (E.D.N.Y. 2015) ........................................................................................ 23

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ............................................................................... 18, 22

*Jackson v. Bloomberg, L.P.*,
   298 F.R.D. 152 (S.D.N.Y. 2014) ...................................................................................... 26

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) ...................................................................................... 16

*Karic v. Major Auto. Cos., Inc.*,
   No. 09 Civ. 5708, 2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) ........................ 20

*Kelen v. World Fin. Network Nat. Bank*,
   302 F.R.D. 56 (S.D.N.Y. 2014) ........................................................................................ 16

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) .............................................................................................. 25

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995) ........................................................................... 15

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
    471 F.3d 24 (2d Cir. 2006) ............................................................................. 27

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................ 21

*Nichols v. Noom, Inc.*,
    No. 20 Civ. 3677, 2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12, 2022) ....................... 17

*Perez v. Allstate Ins. Co.*,
    2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sep. 16, 2014) ..................................... 30

*In re "Agent Orange" Prod. Liab. Litig.*,
    506 F Supp 762 ............................................................................................. 29

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2010 U.S. Dist. LEXIS 139132 (S.D.N.Y. Dec. 22, 2010) ................. 31-31

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ........................................................................... 25

*Soler v. Fresh Direct LLC*,
    2023 U.S. Dist. LEXIS 42647 ........................................................... 25, 26, 27, 31

*Times v. Target Corp.*,
    2019 U.S. Dist. LEXIS 189101 ................................................**Error! Bookmark not defined.**

*Toure v. Cent. Parking Sys. of N.Y.*,
    No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) ........................ 26

*In re Traffic Exec. Ass'n E. R.R.*,
    627 F.2d 631 (2d Cir. 1980) ........................................................................... 16

*Tyson Foods Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ...................................................................................... 27

*United States v. City of New York*,
    308 F.R.D. 53 (E.D.N.Y. 2015) ...................................................................... 16

*Velez v. Majik Cleaning Serv., Inc.*,
    2007 U.S. Dist. LEXIS 46223, Velez v Majik Cleaning Serv., Inc., (S.D.N.Y. June 25,
    2007) ........................................................................................................ 18, 22

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ......................................................................... 27

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..................................................................... 15, 16

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .................................................................... 20, 21

*Wright v. Stern*,
    2003 U.S. Dist. LEXIS 11589 (S.D.N.Y. July 7, 2003) ............................ 30

## STATUTES and RULES

29 U.S.C. § 206(d) ........................................................................................ 12

42 USCS § 2000e-2 ...................................................................................... 12

N.Y. Code § 8 ............................................................................................... 12

NY CLS Exec § 290 ...................................................................................... 12

N.Y. Lab. L. § 194 ........................................................................................ 12

NYC Administrative Code 8-101 .................................................................. 12

Federal Rules of Civil Procedure Rule 23 .......................................... *passim*

# PRELIMINARY STATEMENT[1]

Plaintiffs Deborah Hayman, G.A. Gomes, L. Kasomo, and S. Brown ("Named Plaintiffs" or "Class Representatives"), on behalf of themselves and similarly situated employees, seek approval of a proposed class and collective settlement with Defendant Mastercard, Inc. ("Defendant" or "Mastercard"). The Parties[2] have reached a settlement after a comprehensive investigation into the employment discrimination claims and defenses at issue, which included an extensive exchange of data and information, three full days of mediation sessions with a private, experienced mediator, and months of further negotiations between the Parties. It provides significant benefits to Class Members while ensuring a fair and equitable hiring process for female, Black, and Hispanic employees who work for Mastercard across the United States. It provides for independent review of Mastercard's hiring and promotion policies, as well as cash payments to Class Members.

Specifically, subject to judicial approval, the Parties have reached an agreement to resolve class and collective claims of sex- (including pregnancy), gender-, race-, or ethnicity-based employment discrimination and pay inequity brought on behalf of individuals who, according to Mastercard's records, identify as (1) female, or (2) Black/African American, Latino/Latina/Hispanic, and/or one or more of the foregoing races, who hold or held a Career Level 4 through 10 job located in the United States at Mastercard. This Settlement satisfies all of the criteria for preliminary approval under New York law. *See* Fed. R. Civ. P. 23(e). With this motion, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Joint Stipulation of Settlement and

---

[1] Due to the complexity of the issues in this matter, Plaintiffs respectfully request leave from the Court to file this brief in excess of the 25-page limit dictated by Rule 7.1 of the Local Rules of the Southern District Court. Defendant agrees to this request.

[2] Unless otherwise indicated, capitalized terms have the meaning defined in the Settlement Stipulation.

Release ("Settlement Stipulation"), attached as Exhibit A to the Affirmation of Cara E. Greene in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement ("Greene Decl."); (2) preliminarily certify the settlement class and collective for the purpose of effectuating the settlement; (3) appoint Plaintiffs' Counsel, Outten & Golden LLP, as Class Counsel; (4) approve the proposed Notice of Class and Collective Action Settlement and Fairness Hearing ("Notice"), attached as Exhibit B to the Greene Affirmation, and direct its distribution; and (5) approve the proposed schedule for final settlement approval. Plaintiffs will submit a separate application for attorneys' fees and Named Plaintiffs' Service Payments simultaneously with the motion for final approval of the Settlement. *See* Greene Decl. ¶¶ 62-63.

As part of the Settlement Stipulation, Defendant does not oppose this motion. Settlement Stipulation ¶ 3.4. As set forth below, the Settlement Agreement is fair, reasonable, and adequate, and satisfies all of the criteria for preliminary approval.

## **BACKGROUND**

Named Plaintiffs Hayman, Gomes, Kasomo, and Brown are former Mastercard employees seeking to represent themselves and other individuals who, according to Mastercard's records, identify as female, Black (or African American), and/or Hispanic (or Latino/a) at Mastercard in a Career Level 4-10 job located in the United States during the class periods. *See* Compl. (ECF 1) ¶ 1. Plaintiffs allege that Mastercard's practices of compensation, promotion, or assignment of levels, although facially neutral, negatively impact female, Black, and Hispanic employees. *Id.* ¶ 4. Specifically, Plaintiffs allege that Mastercard has treated female, Black, and Hispanic employees less favorably than similarly-situated white and male comparators with respect to pay, leveling, and promotion, even though they held equivalent positions and, upon information and belief, performed the same or substantially similar work. *Id.* ¶ 3.

2

At all points during settlement negotiations, Mastercard has disputed Plaintiffs' contentions, and has expressly denied all of Plaintiffs' material allegations. Mastercard also contends that Plaintiffs' claims are not suited for class and collective treatment, other than in the context of this proposed settlement.

## I.      Plaintiffs' Counsel's Investigation of Class Discrimination Claims and Mastercard's Defenses

Prior to filing the present lawsuit, Plaintiffs' Counsel conducted a thorough investigation into the merits of the class claims, the proper measure of damages, the legal issues involved in pay equity, racial and gender discrimination issues in corporations, and the likelihood of class certification. Greene Decl. ¶ 5. Plaintiffs' Counsel conducted numerous interviews with all four Plaintiffs, as well as numerous other witnesses, to ascertain the extent and contours of the discrimination claims. *Id.* ¶ 6. Plaintiffs' Counsel obtained and reviewed documents related to Mastercard's performance and promotion standards, and conducted in-depth background research on Mastercard, including its job postings, hiring policies, and other public documents, to obtain information on its structure, locations, and pay, promotion, and leveling policies. *Id.* ¶ 7.

Plaintiffs' Counsel also researched and analyzed Mastercard's public documents, reports, and representations about its employee demographics, pay differentials for white employees compared to employees of color, and promotion disparities among women and people of color. *Id.* ¶ 8. Plaintiffs' Counsel conducted in-depth interviews of other former and current female, Black, and Hispanic employees to determine their compensation, their job responsibilities, their backgrounds and contributions, their comparator information, and other information relevant to their claims. *Id.* ¶ 9.

On July 13, 2022, Plaintiffs' Counsel initiated communications with Mastercard to inform Mastercard of the class employment discrimination claims. *Id.* ¶ 10. Plaintiffs' Counsel sent

3

Mastercard a letter outlining their initial investigation and the conclusion that Mastercard discriminates against female and Black employees with respect to compensation, leveling, promotion, and other terms and conditions of employment. *Id.* ¶ 11. The Parties agreed to engage in pre-litigation settlement discussions, and on August 5, 2022, Plaintiffs' Counsel prepared and sent Mastercard a request to produce certain categories of data and documents, including documentation on its policies and practices for determining compensation, level, and promotion, and data by gender and race relevant to the compensation, level, and promotion of Mastercard employees in Levels 4-10 during the liability period. *Id.* ¶ 12. On September 30, 2022, the Parties entered into a tolling agreement and a confidentiality agreement respecting the provision of the information Plaintiffs had requested. *Id.* ¶ 13.

Over the ensuing months, the Parties exchanged substantial relevant information and data, including Mastercard's policy documents on employee compensation and promotion standards, and extensive data on employee demographics, job history, and compensation history for New York-based employees, including in Mastercard's Purchase and New York City offices. *Id.* ¶ 14. As part of the Parties' pre-litigation settlement discussions, over the next several months, the Parties exchanged correspondence and engaged in numerous telephone conferences, in which the Parties discussed the strengths and weaknesses of the claims and defenses and the possibility of mediation. *Id.* ¶ 15.

In order to assist Plaintiffs' Counsel in analyzing the procured data and policy documents, Plaintiffs' Counsel retained expert consultants in Labor Economics and Industrial and Organizational (IO) Psychology. Plaintiffs' Counsel first retained economic expert EconOne, who assisted in conducting numerous statistical analyses of Mastercard's compensation data, including the use of data controls and aggregation specifications asserted by Mastercard. *Id.* ¶ 16. These

analyses confirmed to Plaintiffs' Counsel that female, Black, and Hispanic employees who perform substantially similar work in jobs that require similar skill, effort, and responsibility (i.e., the same job code) were paid less than their male and white counterparts, after controlling for standard variables in pay differentials noted by labor economists. *Id.* ¶ 17. Specifically, Plaintiffs' economics expert found statistically significant gender and race disparities in average starting levels at hire, even after controlling for age (proxy for experience), year, and business unit. *Id.* ¶ 18. Plaintiffs' expert ran multiple regression models using different iterations of controls, all of which revealed statistically significant compensation gaps. *Id.* ¶ 19. Plaintiffs' Counsel's analysis further revealed that female, Black, and Hispanic employees have suffered significant losses in compensation over their careers because Mastercard improperly assigned them at hire to lower job levels than men and/or white applicants, and the compensation effects of the level and career path assignments persisted throughout their career and affected promotion opportunities. *Id.* ¶ 20. Plaintiffs' Counsel, with the assistance of EconOne, performed initial backpay damages calculations based on these analyses. *Id.* ¶ 21.

In addition, Plaintiffs' Counsel retained a well-respected IO Psychologist, Dr. Nancy Tippins, to provide Counsel with analyses on Mastercard's job architecture and hiring and promotion policies. *Id.* ¶ 22. Dr. Tippins concluded previous job architecture validation studies by Mastercard should have been updated to account for the transformation of the workplace and that a more robust, current job analysis for jobs at Mastercard was needed. *Id.* ¶ 23. Dr. Tippins also reviewed a sample of Mastercard's online job postings in the United States and concluded that they do not conform to IO best practices. *Id.* ¶ 24.

Plaintiffs' Counsel further investigated Plaintiffs' claims of systemic gender and race disparities by conducting extensive interviews with at least 20 former and current Mastercard

employees, including seven Black employees, three Hispanic employees, ten women of other races, and three men who are not class members but who had information regarding Mastercard's leveling, pay, and promotion practices. These employees worked across varying levels, geographies, offices, and job families, and their experiences confirmed the observed statistically significant pay disparities shown in the data. *Id.* ¶ 25. The female employees and employees of color whom Plaintiffs' Counsel interviewed repeatedly asserted that Mastercard substantially underpaid them relative to their experience, job duties, and peers' compensation. *Id.* ¶ 26. Employees further reported to Plaintiffs' Counsel that pay equity concerns were explicitly raised by the Black Employees Business Resource Group in writing throughout the Class Period. *Id.* ¶ 27. Black Mastercard employees reported that they had complained to all levels of management that they were being paid less than their white peers and had requested increased transparency on pay equity and promotion practices. *Id.* ¶ 28.

In addition, Plaintiffs' Counsel collected and reviewed over 200 current and historical job postings from Mastercard's website. *Id.* ¶ 29. Using Mastercard's job architecture, each job posting was coded based on its presumed level and Plaintiffs' Counsel analyzed the contents of the job postings (specifically the role description, duties, qualifications, and salary (excluding generic descriptions of Mastercard and information found on all postings), using a concept known as "cluster analysis." *Id.* ¶ 30. The analysis revealed that there was a significant conceptual overlap across many Mastercard job postings, spanning numerous levels, which supported Dr. Tippins's conclusions that further professional job analyses were needed. *Id.* ¶ 31.

Based upon their investigation and experts' analyses, Plaintiffs' Counsel assessed the merits, risks, and potential damages associated with the class claims of gender and racial discrimination in pay, leveling, and promotions, and the Parties then agreed to mediate the class

dispute. *Id.* ¶ 32. In anticipation of mediation, Plaintiffs shared with Mastercard its statistical analyses and its findings, and Mastercard provided a response to Plaintiffs' claims, disputing their conclusions, and outlined its defenses. *Id.* ¶ 33.

Throughout the Parties' discussions, Mastercard disputed Plaintiff's assertions, pointing to its internal policies and practices, its own pay equity studies, and its work with respect to diversity, equity, and inclusion. Mastercard denies that there were or are any discriminatory differentials in compensation, leveling, or promotion, contends that it has complied at all times with applicable federal, state, and city laws, and disputes the facts alleged by Plaintiffs. Moreover, Mastercard retained its own labor economists and IO psychologists, who challenged the conclusions drawn by Plaintiffs' experts, finding no statistically significant disparities in pay for substantially similar work and validating Mastercard's job architecture. Further, Mastercard asserted that that Plaintiffs' claims were not suitable for class or collective treatment. While Plaintiffs believe that they would be able to present rebuttals to these arguments in litigation, the Parties' discussions made clear that any litigation of Plaintiffs' claims would be hard-fought, with no certainty of success.

II.    **Mediation and Settlement Negotiations Between the Parties**

On August 1, 2023, the Parties held an initial mediation session with Dina R. Jansenson, Esq., an experienced JAMS mediator of class discrimination lawsuits. *Id.* ¶ 35. Following the first mediation session, which focused on a New York class, Mastercard agreed to negotiate a resolution on behalf of a nationwide class, and agreed to produce for all United States-based employees during the relevant class periods the same kind of data it previously produced for New York employees. *Id.* ¶ 36. Plaintiffs' economic expert ran the same regression models previously provided to Mastercard, regressing for the same neutral factors used in the analysis of the New

York claims. *Id.* ¶ 37. As with the New York analysis, Plaintiffs' nationwide regression revealed that Mastercard pays female, Black, and Hispanic employees a statistically significant amount less than their male and white colleagues. *Id.* ¶ 38. Plaintiffs provided Mastercard with these additional analyses. *Id.* ¶ 39. Mastercard provided Plaintiffs and the mediator with its contrary analysis, which it contended showed no statistically significant difference in pay. *Id.* ¶ 40.

On March 25, 2024, the Parties participated in a second mediation session with Ms. Jansenson. *Id.* ¶ 41. After the second mediation session, the Parties agreed to the general monetary terms of a class settlement. *Id.* ¶ 42. Other terms of the settlement were negotiated over the ensuing months, including, but not limited to, the scope of the release, and the programmatic relief Mastercard would undertake. *Id.* ¶ 43. Plaintiffs' Counsel engaged in numerous calls with defense counsel and Ms. Jansenson to reach resolution. *Id.* ¶ 44.

On June 7, 2024, the Parties participated in a third mediation session with Ms. Jansenson in order to reach resolution on the remaining terms for the class settlement. *Id.* ¶ 45.. Ultimately, Ms. Jansenson issued a mediator's proposal, which the Parties subsequently accepted. *Id.* ¶ 46. The Parties finalized the Settlement Stipulation on January 13, 2025. *Id.* ¶ 47.

Importantly, at all times during the settlement negotiation process, negotiations were conducted at arm's length. *Id.* ¶ 48; *see* Exhibit A (Settlement Stipulation) ¶ 30.1.

## THE LITIGATION

As contemplated in the Settlement Stipulation, on January 14, Plaintiffs filed a Class and Collective Action Complaint against Defendant in this Court on behalf of themselves and others similarly-situated, alleging that Defendant violated federal, state, and local law in the application of its pay, leveling, and promotion practices. Greene Decl. ¶ 49. Plaintiffs' Complaint seeks

recovery of backpay wages, plus interest, other damages, attorneys' fees and costs, and injunctive

relief. Compl. ¶ 145.

## THE SETTLEMENT CLASS

For settlement purposes only, Mastercard does not oppose certification of the following

Classes defined as:

> **Gender Class**:  all individuals who identify as women, who have not, prior to the date of the Preliminary Approval Order, signed a separation agreement that includes a release of the Gender Claims, and who were employed by Mastercard in a Qualified Position in the United States from the following dates (based on the location at which they were employed by Mastercard): New York, from September 30, 2016; Virginia, from September 30, 2020; California, from September 30, 2018; Massachusetts, Washington, and Colorado, from September 30, 2019; and all other States, from December 4, 2019, through the date of this signed Settlement Stipulation. Gender Class Members who sign a separation agreement that includes a release of the Gender Claims on or after the date of the Preliminary Approval Order will remain Gender Class Members for Settlement purposes only and may participate in the Settlement, provided, however, that such participation shall not otherwise alter the effect of the release they have given in any way.

> **Race Class**:  all individuals who identify as Black (or African American) and/or Hispanic (or Latino/a), who have not, prior to the date of the Preliminary Approval Order, signed a separation agreement that includes a release of the Race Claims, and who were employed by Mastercard in a Qualified Position in the United States from the following dates (based on the location at which they were employed by Mastercard): New York, from October 8, 2019; California, from September 30, 2018; Colorado, from September 30, 2019; all other States, from December 4, 2019, through the date of this signed Settlement Stipulation. Race Class Members who sign a separation agreement that includes a release of the Race Claims on or after the date of the Preliminary Approval Order will remain Race Class Members for Settlement purposes only and may participate in the Settlement, provided, however, that such participation shall not otherwise alter the effect of the release they have given in any way.

Exhibit B (Settlement Stipulation) ¶¶ 1.15, 1.35. Based on Mastercard's records as of January 10,

2025, there are approximately 7,500 total Class Members, including 1,200 who are members of

both the gender and race classes. Greene Decl. ¶ 55.

<u>SUMMARY OF THE SETTLEMENT TERMS</u>

I.    <u>**Monetary and Programmatic Relief**</u>

The Parties' settlement has two major components: a non-reversionary settlement fund of $26,000,000.00 ("Gross Settlement Fund"), and programmatic relief that Mastercard has agreed to undertake. *See* Settlement Stipulation ¶¶ 1.44, 15.

The monetary aspect of the settlement covers alleged backpay payments to Participating Class Members and other damages, including interest, and in addition, Court-approved Service Payments to the Class Representatives, Settlement Administrator Fees and Costs for administrative expenses incurred in connection with the Settlement, and Court-approved Attorneys' Fees and Costs. *See id.* ¶¶ 5-9. The Net Settlement Fund will be divided into two funds, which will be distributed to Gender Class Members and Race Class Members, respectively. *See id.* ¶ 5.2. These funds will be allocated to all Gender and Race Class Members who do not exclude themselves, based on a formula that accounts for the length of their employment at Mastercard.

Under the Parties' programmatic relief agreement, Mastercard commits to several key provisions to promote gender and race pay equity at the company. First, Mastercard agrees to extend its annual pay equity audit process with an external consulting firm through 2027, and report the results publicly. *See id.* ¶ 15.2. In addition, Mastercard will also engage a specialist in industrial organizational psychology ("Consultant") to undertake a comprehensive review of its career ecosystem (the "Review"). *See id.* ¶ 15.3.1. The Review will encompass Mastercard's career framework (including career levels, titling, and structure; job architecture; and skills architecture) and the alignment and integration of key people processes (including talent acquisition, learning and development, career mobility, rewards, and workforce planning) within the career framework. *See id.* ¶ 15.3.4. The Review will include defining criteria for advancement and implementing a

governance structure to maintain global consistency across levels. *See id*. If the Consultant deems any changes to the current structure to be necessary to ensure a consistent, transparent, and calibrated job evaluation system and promotional process, it will recommend such changes. *See id.* ¶ 15.3.5.

Moreover, within 90 (ninety) days of receiving the Consultant's recommendations, Mastercard will provide the Consultant's recommendations to Class Counsel and advise the Consultant and Class Counsel:

    (1)    which recommendations Mastercard will implement and the execution plan for implementation, including timelines;

    (2)    which recommendations Mastercard will amend and the execution plan for those amended recommendations; and

    (3)    which recommendations Mastercard plans not to follow and what steps, if any, it will implement in lieu of such recommendations.

*See id.* ¶ 15.3.6. Within 120 (one hundred and twenty) days from the end of the Consultant's scope of engagement, Mastercard will provide Class Counsel with a Report outlining the steps it has taken or is taking to implement the Consultant's recommendations. *See id.* ¶ 15.3.8. Mastercard agrees to meet with Class Counsel annually, to review and discuss the annual pay equity audit processes and results. *See id.* ¶ 15.2.2. In the event that Mastercard does not implement a particular recommendation of the Consultant, Class Counsel may meet with Mastercard's Chief People Officer and General Counsel to discuss their views and engage in a good-faith discussion on the topic. *See id.* ¶ 15.3.11. The entire cost of the programmatic relief will be paid by Mastercard. *See id.* ¶ 15.4.

## II.    <u>Releases</u>

All Participating Class Members will release claims asserted on behalf of the Class Members that arose during the class period and relate to the facts alleged in the Complaint: claims relating to compensation, promotion, or assignment of level, arising under federal, state, and local anti-discrimination or equal pay laws, including but not limited to the Federal Equal Pay Act of 1963, 29 U.S.C. § 206(d); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; and their state and local corollaries, including the New York Equal Pay Law, as amended, N.Y. Lab. L. § 194 ("NY EPL"); the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"). The Class Release does not cover, and Class Members preserve, the following claims: hostile work environment or harassment claims; failure to accommodate claims; leave claims; unlawful termination claims; retaliation claims; and claims for discrimination on bases other than sex (including pregnancy), gender, race, or ethnicity. Exhibit A (Settlement Stipulation) ¶¶ 1.16, 1.36.

## III.    <u>Attorneys' Fees And Costs</u>

Plaintiffs' Counsel will apply for one-third of the Gross Settlement Fund ($8,666,666.66) as attorneys' fees. *Id.* ¶ 7.1. Plaintiffs' Counsel will also seek reimbursement for their reasonable litigation costs and expenses. *Id.* All fees and costs awarded will be deducted from the Gross Settlement Fund. *Id.* Plaintiffs will submit an application for attorneys' fees and costs as part of its motion for final approval of the settlement. *Id.*

## IV.    <u>Service Payments</u>

In addition to their individual awards under the allocation formula, Plaintiffs Hayman, Gomes, Kasomo, and Brown seek a reasonable service payment of $25,000.00 each, in recognition

of the services they rendered on behalf of the Class as Class Representatives. Exhibit 1 (Settlement Stipulation) ¶ 8.1. These payments will be deducted from the Gross Settlement Fund and are awarded in addition to their individual Participating Class Member Payments. *Id*. ¶ 8.2. Plaintiffs will submit a motion seeking Service Payments with the motion for final approval of the settlement. *See* Greene Decl. ¶ 8.1.

The payments to Plaintiffs are intended to compensate them for (a) the significant time and effort they spent on behalf of the Class with the prosecution of the claims, and the resulting value they have conferred to Settlement Class Members, and (b) the exposure and risk they incurred by taking a leadership role in a class action lawsuit, along with the risk of retaliation in the employment marketplace by employers that do not wish to employ someone associated with a lawsuit against an employer. Greene Decl. ¶ 51. Plaintiffs were instrumental to the investigation and prosecution of this case. Plaintiffs participated in multiple phone calls to detail their experience at Mastercard and offered critical insight into Mastercard's pay practices, their alleged pay gap experience, denials of promotions, and other roadblocks female employees and Black and Latinx employees encounter at Mastercard. *Id.* ¶ 52. Plaintiffs participated at key moments including by providing input to Plaintiffs' Counsel in the course of mediation and subsequent negotiations, when details of the class settlement and programmatic relief were being finalized. *Id.* ¶ 53.

In sum, the $26,000,000 gross recovery would not have been possible without the Named Plaintiffs' efforts. *Id.* ¶ 54; *see Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing the important role that named plaintiffs play as the "primary source of information concerning the claims").

V.    <u>Settlement Claims Administrator</u>

The Parties will jointly select and appoint a third-party settlement administrator with experience administering these types of class settlements ("Settlement Administrator") to send the Notice to Class Members, calculate settlement payments, distribute checks to Participating Class Members, and perform other tasks related to the administration of the Settlement. Greene Decl. ¶ 62; *see* Ex. A (Settlement Stipulation) ¶ 9.1. Payment of fees and costs billed by the Settlement Administrator will be paid from the Gross Settlement Fund. Exhibit A (Settlement Stipulation) ¶ 9.5.

The Notice to each respective Class Member shall inform them of the Settlement, the claims they are releasing, and the method used to calculate the payments to Class Members under the Settlement. *Id.* ¶ 11.1 & Ex. B (Notice) §§ 4, 5, 9. The Notice will advise Class Members of their right to exclude themselves from the settlement and how to do so. *Id.* at Ex. B (Notice) § 10. It will also advise Class Members that they have the right to object to the settlement and how to do so. *Id.* § 11. Class Members will have 30 days to object to or be excluded from the Settlement, or 20 days for Class Members whose notice forms are returned as undeliverable and re-mailed. Exhibit 1 (Settlement Stipulation) ¶ 11.7.1.

<u>CLASS ACTION SETTLEMENT PROCEDURE</u>

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.  If the Court grants preliminary approval, within 21 days of the Court's Order, Defendant will produce to the Settlement Administrator a list containing the following information for each Class Member, to the extent it exists in Mastercard's records: (1) name; (2) gender as reflected in Mastercard's records; (3) race as reflected in Mastercard's records; (4) start and end date of employment in Qualified Positions ; (5) current or last known mailing address; (6) personal email address where known, and (7) current or last known telephone numbers. *Id.* ¶ 10.

2. Within 30 days after entry of a Preliminary Approval Order, the Settlement Administrator will send the Notice by First Class U.S. Mail and email and/or text (if available) to each Class Member. *Id.* ¶ 11.2.

3. Plaintiffs will file Motions for Final Settlement Approval and for Service Payments and Attorneys' Fees prior to the date on which the Court holds a hearing to determine whether to grant final approval of the settlement ("Final Approval Hearing"). *See id.* ¶ 4.

4. After the Final Approval Hearing, if the Court grants Final Approval of the Settlement and no party seeks a rehearing, reconsideration, or appeal, the "Effective Date" of the Settlement will be 30 days after the Court has entered its Order granting final approval. *Id.* ¶ 1.9.

5. Within 14 days after Final Approval, Defendant shall deposit $26,000,000.00 into the Qualified Settlement Fund. *Id.* ¶ 6.

6. The Settlement Administrator will mail all settlement checks to Participating Class Members within 14 days after Defendant deposits the Qualified Settlement Fund. *Id.* ¶ 11.9.1.

7. The Settlement Administrator shall pay any Attorneys' Fees and Lawsuit Costs awarded by the Court in connection with this Settlement from the Qualified Settlement Fund to Class Counsel no later than three business days after Defendant deposits the Settlement Payment into the Qualified Settlement Fund. *Id.* ¶ 7.2.

8. Sixty days after the initial distribution of checks to Participating Class Members, the Settlement Administrator will send a reminder to the Participating Class Members via email and First Class U.S. Mail reminding them to deposit their checks prior to the 90-day deadline. *Id.* ¶ 11.9.4.

## **ARGUMENT**

### I.    **Preliminary Approval of the Class Action Settlement Is Appropriate**

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995). "In

exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405, 2015 U.S. Dist. LEXIS 121574, at *17 (S.D.N.Y. Sept. 9, 2015) (quotation and citation omitted).

Review of a class settlement proceeds in steps. Fed. R. Civ. P. 23(e). First, the "court makes a preliminary evaluation of fairness," and then the Court determines whether notice to the class is justified by the parties' showing that the court will likely be able to approve the settlement as fair, reasonable, and adequate. *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 318 (S.D.N.Y. 2019) (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019)). The Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n -- E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980). Then, after notice is given to the class, the court holds a fairness hearing. *See* Fed. R. Civ. P. 23(e)(2); *United States v. City of New York*, 308 F.R.D. 53, 62 (E.D.N.Y. 2015).

Preliminary approval requires an "initial evaluation" of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties. *Brazier v. Real Hosp. Grp., LLC*, No. 20 Civ. 8239, 2021 U.S. Dist. LEXIS 254707, at *6 (S.D.N.Y. Nov. 12, 2021); *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014). Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement. *Wal-Mart Stores*, 396 F.3d at 116. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quoting Manual for Complex Litigation (Third) § 30.42 (1995)).

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Nichols v. Noom, Inc.,* No. 20 Civ. 3677, 2022 U.S. Dist. LEXIS 123146, at *19 (S.D.N.Y. July 12, 2022) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007) (alterations in original)). Moreover, "a mediator's involvement in settlement negotiations can help demonstrate their fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019)).

The first step in the settlement process simply allows notice to be issued to the class and for class members to object to or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input. In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court need not evaluate the *Grinnell* factors to conduct its initial evaluation of the settlement, the Court may consider these criteria as a guide.

The *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

      (8) the range of reasonableness of the settlement fund in light of the best possible

          recovery; [and]

      (9) the range of reasonableness of the settlement fund to a possible recovery in

          light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

Here, the relevant *Grinnell* factors weigh in favor of preliminary approval.

### A.    Litigation Would Be Risky, Complex, Costly, and Long (Factors 1 & 6).

By reaching a favorable settlement early, before litigation, including certification and dispositive motions, trial, or appeals, Plaintiffs avoid significant risk, expense, and delay and ensure timely individual and programmatic relief for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *19 (S.D.N.Y. June 25, 2007).

This case is complex, with approximately 7,500 putative Class Members, a nationwide class and collective, and fact-intensive claims regarding a sophisticated corporation's hiring, pay, and promotion practices. Greene Decl. ¶¶ 7, 36, 55. Establishing both liability and damages would require significant and complicated factual and expert discovery. Plaintiffs recognize the legal, factual, and procedural obstacles to recovery. Whether female, Black, and Hispanic employees performed substantially similar or equal work to their male and white comparators is a fact-intensive determination. Plaintiffs would have to present evidence regarding job responsibilities

and duties within many different job families, as well as statistical proof of a class-wide violation, which Defendant would dispute.

If this litigation proceeded, Mastercard would deny that its treatment of its female, Black, and Hispanic employees results in any discriminatory differentials in compensation, leveling, or promotion, or is otherwise unlawful or discriminatory, and would challenge Plaintiffs' claims at every stage of the litigation, including at class certification, summary judgment, and trial. *See supra* p. 7. In addition, both Parties would retain testifying experts who would vigorously dispute the other side's statistical analyses. Plaintiffs would then face risks as to class certification and summary judgment even after a lengthy discovery process because of the fact-intensive nature of Plaintiffs' claims and Mastercard's defenses. If Plaintiffs' claims survived those certification and dispositive motions, a trial on the merits would involve significant risk as to both liability and damages. While Plaintiffs believe they could ultimately defeat Mastercard's defenses and establish liability, this would require significant factual development and favorable outcomes at trial, and on appeal, all of which are inherently uncertain and lengthy. The proposed settlement minimizes uncertainty, and therefore this factor weighs in favor of preliminary approval.

### B.    The Reaction of the Class Has Been Positive (Factor 2).

At this early stage, the fact that the Named Plaintiffs have expressed their support for the settlement by signing the Settlement Stipulation weighs in favor of preliminary approval. After notice issues and Class Members have an opportunity to participate in the settlement, object, or opt-out, the Court will be in a better position to assess the extent of Class Member support.

### C.    The Parties Have Exchanged Sufficient Relevant Information to Evaluate the Claims and Defenses (Factor 3).

The Parties have completed ample informal discovery to determine the strengths and potential weakness of their claims. The proper question is "whether counsel had an adequate

appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)); *see also Karic v. Major Auto. Cos.*, No. 09 Civ. 5708, 2016 U.S. Dist. LEXIS 57782, at *19 (E.D.N.Y. Apr. 27, 2016) (same). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (alterations in original).

The Parties' efforts and informal discovery here meet this standard. As discussed above, the Parties engaged in extensive voluntary discovery relating to liability and class-wide damages. *See* Greene Decl. ¶¶ 14, 36. Specifically, Mastercard produced, and Plaintiffs' Counsel reviewed, numerous documents relating to its policies and practices on pay, leveling, and promotions. Mastercard also produced significant data on demographics, promotion, and compensation for all United States-based employees at Levels 4-10. Subsequently, Plaintiffs' Counsel engaged a recognized labor economist expert to perform multiple models of statistical analyses and conducted damages calculations based on the data that Defendant provided. *Id*. 22. Plaintiffs' Counsel's IO expert provided an opinion on Mastercard's job architecture, policies, and proposals for programmatic relief. *Id.* ¶¶ 23-24. Plaintiffs' Counsel's internal expert also conducted a cluster analysis on hundreds of Mastercard's job postings. *Id.* ¶ 30. In addition, Plaintiffs' Counsel conducted numerous interviews with former and current Mastercard employees across the United States who provided anecdotal support for the statistically significant pay disparities shown in the data. *Id.* ¶ 9. Mastercard also retained its own labor economists and IO experts, whose conclusions and analyses were shared with Plaintiff's Counsel and considered by Plaintiffs' experts. *Id.* ¶ 34.

In addition, the Parties participated in four mediation sessions with an experienced, third-party mediator, and throughout engaged in substantial negotiations to reach a settlement, which allowed Plaintiffs to evaluate the strengths and weaknesses and gave them "an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537 (citation omitted). Thus, this factor supports preliminary approval. *See, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (collecting cases) (granting preliminary approval even where only targeted, pre-mediation discovery had occurred).

### D. The Risk of Establishing Liability and Damages for the Class Through Trial Favors Approval (Factors 4 and 5).

Plaintiffs recognize the substantial risks of the litigation, including the possibility that the lawsuit, if not settled now, might not result in any recovery or might result in a recovery less favorable to the Class. While Plaintiffs believe their pay equity and discrimination class claims are strong, they are not without risk. The determination of whether Class Members performed substantially similar or equal work to their white and male comparators, and whether they are otherwise similarly-situated for purposes of the discrimination claims, would be fact-intensive. Plaintiffs would have to present evidence regarding their job responsibilities and duties within different job roles, as well as statistical proof to show a class-wide violation, all of which would be disputed by Defendant. For example, as explained above and based on its own pay analyses, Defendant would likely argue that there is no statistically significant pay disparity for Class Members who it contends are similarly situated.

Mastercard denies that its alleged treatment of Class Members results in any discriminatory differentials in compensation, leveling, or promotion, or is otherwise unlawful or discriminatory, and would vigorously contest the propriety of class certification. Mastercard would challenge Plaintiffs' claims at every stage of the litigation, including at the class certification stage, summary

judgment, and trial. Notwithstanding these arguments, the overall settlement commits Mastercard to pay $26,000,000.00 to compensate Class Members and to undertake significant programmatic relief with the assistance of a retained expert – a substantial result ensuring that individual Class Members will meaningfully benefit. In light of the strengths and weaknesses of the case, the Settlement achieves significant benefits for the Class Members in a case where failure at trial is certainly possible.

Although Plaintiffs believe their claims have merit, and are suitable for class and collective action treatment, they also recognize that they would face significant legal, factual, and procedural obstacles to recovering damages on their claims and that any recovery may not occur for several years. Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. at 934; *see also Velez v Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *19 (S.D.N.Y. June 25, 2007) ("The proposed settlement benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial.").

While Plaintiffs believe that they would ultimately prevail, the Settlement eliminates these risks and allows all Class Members to recover now.

### E.    The Court Should Give Little Weight to Whether Defendant Can Withstand a Greater Judgment (Factor 7).

Here, there is no known risk that Mastercard would not be able to withstand a greater judgment, but the "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9. This factor should be given little weight, and the settlement ensures that Mastercard will

promptly transfer the full $26,000,000 to the Settlement Administrator within 14 days of the Final

Approval Date. Exhibit B (Settlement Stipulation) ¶ 6.

**F.      The Settlement Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9).**

The value of the settlement compared to the anticipated recovery after trial, discounted for

litigation risks, weighs heavily in favor of approval. The reasonableness of a settlement is not

susceptible to "use of a 'mathematical equation yielding a particulariz[ed] sum.'" *Hernandez v.*

*Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (quoting *Frank v. Eastman Kodak*

*Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)). "Instead, 'there is a range of reasonableness with

respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular

case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.

1972)).

The programmatic relief provided in the settlement is far-reaching. It requires that

Mastercard undertake an independent third-party review and analysis of its policies and practices

and provide Class Counsel with the results and any responsive changes. This relief includes a

commitment to continue Mastercard's yearly pay equity audits for three years and publish the

results. It also requires Mastercard to hire an IO Psychologist to undertake a comprehensive review

of its career ecosystem, encompassing Mastercard's career framework (including career levels,

titling, and structure; job architecture; and skills architecture) and the alignment and integration of

key people processes (including talent acquisition, learning and development, career mobility,

rewards, and workforce planning) within the career framework. The IOP will recommend any

proposed changes for implementation and execution, and Mastercard will report to Plaintiffs'

Counsel the changes it will adopt. This meaningful relief that Mastercard has agreed to directly

addresses the driving issue of this case: ensuring fair and equitable pay, leveling, and promotion opportunities for female, Black, and Hispanic employees at Mastercard. Thus, the settlement will benefit all future female, Black, and Hispanic employees, and promote fairness throughout their employment with respect to their assignment of level, compensation, and promotion.

The settlement also provides for significant monetary compensation for every Class Member from a Gross Settlement Fund of $26,000,000. Each Participating Class Member is entitled to claim from this fund, with the amount of their individual payments based on factors including the duration of their employment at Mastercard during the relevant period. Each Participating Class Member will receive at least a minimum payment of $100.

In sum, the terms of the Settlement Agreement are fair and reasonable, as evidenced by application of the relevant *Grinnell* factors.

## II.   Conditional Certification of the Class Is Appropriate

For settlement purposes, Plaintiffs seek to certify the proposed Settlement Class under Rule 23(b)(3). As stated further below, the proposed Settlement Class satisfies Rule 23's requirements. Mastercard does not oppose class certification for the purpose of settlement only.

### A.   Numerosity Is Satisfied.

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted). According to information produced by Mastercard, there are approximately 7,500 Class Members. Greene Decl. ¶ 55. The proposed Class easily satisfies this requirement.

### B.   Commonality Is Satisfied.

The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of

the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, all Class Members are unified by a common issue: whether Mastercard's pay, promotion, and leveling policies and practices discriminated against them because of their gender and/or race, resulting in pay inequity. Accordingly, Plaintiffs' claims are well-suited for class certification because they arise from the common question of whether Mastercard's practices around compensation, assignment of level, and promotions violated federal, state, and city law.

### C.    Typicality Is Satisfied.

"Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182; *see also Soler*, 2023 U.S. Dist. LEXIS 42647, at *14-15. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993).

In this case, Plaintiffs' claims are typical of the claims of the Class Members they seek to represent. Plaintiffs and the Class Members all hold or held Level 4-10 jobs located in the United States during the proposed class periods and are identified in Mastercard's records as female (Named Plaintiffs Hayman, Gomes, and Kasomo), and Black and/or Hispanic (Named Plaintiffs Gomes, Kasomo, and Brown). Plaintiffs, like all Class Members, allege that Defendant's policies and practices discriminated against them and that Mastercard failed to pay them equally as compared to

male and/or white employees. Typicality is present because (i) the claims of Plaintiffs and all other members of the putative Class arise from the same alleged conduct; and (ii) Plaintiffs' and Class Members' claims are based on the same legal theory. *See Times v. Target Corp.*, No. 18 Civ 2993, 2019 U.S. Dist. LEXIS 189101, at *3-4 (S.D.N.Y. Oct. 29, 2019); *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97-98 (S.D.N.Y. 2010).

**D.     Adequacy of the Named Plaintiffs Is Satisfied.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation.'" *Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647, at *6 (S.D.N.Y. Mar. 14, 2013). (quoting *In re GSE Bonds*, 414 F. Supp. 3d at 692)); *see also Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) ("The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." (internal quotation marks omitted, alteration in original)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting *Martens*, 181 F.R.D. at 259) (internal quotation marks omitted, alteration in original); *see also Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (same).

The Named Plaintiffs meet the adequacy requirement because they do not have interests that are antagonistic to or at odds with those of putative Class Members. *See Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 65408, at *9 (S.D.N.Y. May 9, 2012) (adequacy satisfied

where, *inter alia*, there was no evidence that named plaintiffs' and class members' interests were at odds); *Soler*, 2023 U.S. Dist. LEXIS 42647, at *6 (same). Here, Plaintiffs' experiences were substantially the same as that of all other Class Members, and they have the same interest in remedying Defendant's alleged violations.

### E.    Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)) (internal quotation marks omitted). For the purposes of settlement, these requirements are met.

### 1.    Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citation omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied. *See Soler*, 2023 U.S. Dist. LEXIS 42647, at *16 (quoting *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005)).

Here, the Named Plaintiffs and Class Members are unified by a common issue: whether Mastercard's compensation, leveling, and promotion policies and practices discriminated against them because of their gender and/or race, resulting in pay inequity. *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 80-81 (S.D.N.Y. 2018) (finding that common issues predominated on disparate impact claims challenging promotion practices under Title VII). Accordingly, Plaintiffs' claims are well-suited for class certification because they arise from the common question of whether the pay inequity alleged by Class Members violated federal, state, and city law.

## 2.    A Class Action Is a Superior Mechanism.

Rule 23(b)(3) next considers whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.[3] Fed. R. Civ. P. 23(b)(3). To Plaintiffs' Counsel's knowledge, no other individual has instituted an action against Mastercard alleging the same claims to recover the wages and other damages Plaintiffs seek in this case. Thus, there is no directly competing litigation already commenced by any member of the class and the existence of over 7,500 Class Members, in and of itself, demonstrates both the impracticability and inefficiency of prosecuting or defending separate actions. It makes good sense to concentrate the litigation in this forum because Plaintiffs Gomes's and Brown's claims arise under federal and state (New York) law, and because Mastercard's Headquarters are located in Purchase, New York.

---

[3] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in evaluating a settlement class. *See Amchem*, 521 U.S. at 620.

Moreover, certification of the Settlement Class is "superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually." *In re Canon United States Data Breach Litig.*, Nos. 20 Civ. 6239, 6380, 2023 U.S. Dist. LEXIS 206513, at *9 (E.D.N.Y. Nov. 15, 2023); *see also Capsolas*, 2012 U.S. Dist. LEXIS 65408, at *9 (same). The class action method is particularly effective where common issues can be most efficiently and economically addressed on a class-wide basis. *See In re "Agent Orange" Prod. Liab. Litig.*, 506 F Supp 762, 788 n33 (E.D.N.Y. 1980) (finding "class action is superior to any other available method" where "questions of law or fact common to the members of the class predominate[d] over questions of law or fact affecting only individual members").

## III.    Certification of the EPA Collective Is Appropriate

Certification of the EPA Collective is appropriate for the same reasons that Rule 23 certification is appropriate. *See supra*, § II; *see also Calibuso v Bank of Am. Corp.*, 299 F.R.D. 359, 361 n.1 (E.D.N.Y. 2014) (EPA collective conditionally certified where Plaintiffs satisfied EPA's "'similarly situated' requirement, which falls short of the 'much higher threshold of demonstrating that common questions of law and fact will 'predominate.'" (citation omitted)).

## IV.    Plaintiffs' Counsel Should Be Appointed as Class Counsel

O&G should be appointed as Class Counsel. Rule 23(g), which governs the standards and framework for appointing class counsel, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R.

Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). "No single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23, advisory committee's notes to 2003 amendment.

Plaintiffs' Counsel should be appointed as Class Counsel because they have already done substantial work identifying, investigating, prosecuting, and settling the claims; have substantial experience prosecuting and settling employment discrimination class actions; are well-versed in employment and class action law; and are well-qualified to represent the interests of the Class. Greene Decl. ¶¶ 2-3. *See*, *e.g.*, *Chen-Oster v. Goldman Sachs & Co.*, 325 F.R.D. 55 (S.D.N.Y. 2018) (certifying gender discrimination class action with O&G as class counsel); *Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277, at *11-12 (S.D.N.Y. Sep. 20, 2016) (stating that O&G's attorneys are "nationally recognized employment class action litigators" and granting final approval of Title VII class action settlement); *Perez v. Allstate Ins. Co.*, No. 11-Civ. 1812, 2014 U.S. Dist. LEXIS 130214, at *69 (E.D.N.Y. Sep. 16, 2014) (appointing O&G as class counsel and noting that "O&G has the requisite experience in handling class actions . . . , are well versed in the applicable law, and have the resources necessary to represent the NYLL Class fairly and adequately"); *Easterling v. Connecticut, Dep't of Correction*, No. 08 Civ. 826, ECF No. 75, slip op. at 8 n.2 (July 29, 2013 D. Conn.) (appointing O&G as class counsel in a Title VII case); *Duling v. Gristede's Operating Corp.*, No. 06 Civ. 10197, ECF No. 359 slip op. at 3 (June 1, 2010 S.D.N.Y.) (noting O&G was appointed class counsel in Title VII case); *Wright v. Stern*, 2003 U.S. Dist. LEXIS 11589, at *7\19 (S.D.N.Y. July 7, 2003) (appointing O&G as class counsel in a Title VII case).

## V.    <u>The Proposed Notice to the Class Is Appropriate</u>

The proposed Notice fully complies with due process and Rule 23(c)(2)(B). The Notice is written in plain language and organized and formatted to be as clear as possible. *Id.* R. 23(e). It is based on the model notices provided by the Federal Judicial Center ("FJC"); *see Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2010 U.S. Dist. LEXIS 139132, at *4 (S.D.N.Y. Dec. 22, 2010) (approving notice based on the FJC's model notices). The Notice describes the Settlement's terms, the proposed attorneys' fees and costs, and the proposed service awards; will be sent with an estimate of each Settlement Class Member's Settlement Share; explains how to opt out or object; and will provide the date, time, and place of the fairness hearing. *See* Greene Decl., Ex. A (Settlement Agreement), Ex. 1 (Notice); *see also Soler*, 2023 U.S. Dist. LEXIS 42647, at *18-19 (approving similar notice).

The Notice process is also reasonably calculated to reach all class members who would be bound by the Settlement. *Soler*, 2023 U.S. Dist. LEXIS 42647, at *19-20. The Settlement Administrator will mail and e-mail the Notice to Settlement Class Members, create and administer a settlement website, take reasonable steps to obtain correct addresses for Settlement Class Members whose notice is returned as undeliverable, and attempt re-mailings for those Settlement Class Members. *See* Greene Decl., Ex. A (Settlement Agreement), Ex. 1 (Notice). No claim form is required, and the proposed Notice process presents no barriers to participation. *Id.; see Soler*, 2023 U.S. Dist. LEXIS 42647, at *20 (approving similar distribution plan).

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement and enter the Proposed Order.

Dated: January 14, 2025

Respectfully submitted,

_____

Cara E. Greene

OUTTEN & GOLDEN LLP
Cara E. Greene
Adam T. Klein
Nantiya Ruan
Chauniqua D. Young
Shira Z. Gelfand
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

OUTTEN & GOLDEN LLP
Jennifer Davidson
1225 New York Ave NW Suite 1200,
Washington, DC 20005
Telephone: (202) 301-5509