**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEBORAH HAYMAN. et al., individually and on behalf of all others similarly situated, | Case No. 7:25-cv-00340 |
| Plaintiffs, | |
| v. | |
| MASTERCARD, INC., | |
| Defendant(s). | |

**DECLARATION OF CARA E. GREENE IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS AND COLLECTIVE ACTION SETTLEMENT**

I, Cara E. Greene, declare:

I am a Partner at Outten & Golden LLP ("O&G"), in New York, New York, Plaintiffs'

Counsel in this action.

O&G is a national law firm with offices in New York, San Francisco, and Washington,

DC. O&G's practice focuses on representing employees in all types of employment matters,

including individual and class-action litigation involving wage and hour, discrimination, and

harassment claims, as well as contract and severance negotiations.

In addition to my own experience litigating employment disputes on behalf of classes and

individuals, the partners and associates working on this file also have extensive experience in

employment and class-action litigation, are well-versed in employment and class action law, and

are well-qualified to represent the interests of the class.

I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary

Approval of the Class and Collective Action Settlement. I have personal knowledge of the facts

set forth herein and could competently testify to them if called as a witness.  Capitalized terms not otherwise defined herein have the same meaning as in the Joint Stipulation of Settlement and Release (the "Settlement Stipulation") attached hereto as Exhibit A.

**Factual and Procedural Background**

Prior to filing the present lawsuit, we conducted a thorough investigation into the merits of the class claims, the proper measure of damages, the legal issues involved in pay equity, racial and gender discrimination issues in corporations, and the likelihood of class certification.

We conducted numerous interviews with all four Plaintiffs (the "Named Plaintiffs"), as well as numerous other witnesses, to ascertain the extent and contours of the discrimination claims.

We obtained and reviewed documents related to Mastercard's performance and promotion standards, and conducted in-depth background research on Mastercard, including its job postings, hiring policies, and other public documents, to obtain information on its structure, locations, and pay, promotion, and leveling policies.

We also researched and analyzed Mastercard's public documents, reports, and representations about its employee demographics, pay differentials for white employees compared to employees of color, and promotion disparities among women and people of color.

We conducted in-depth interviews of other former and current female, Black, and Hispanic employees to determine their compensation, their job responsibilities, their backgrounds and contributions, their comparator information, and other information relevant to their claims.

On July 13, 2022, we initiated communications with Mastercard to inform Mastercard of the class employment discrimination claims.

We sent Mastercard a letter outlining our initial investigation and the conclusion that Mastercard discriminates against female and Black employees with respect to compensation, leveling, promotion, and other terms and conditions of employment.

The Parties agreed to engage in pre-litigation settlement discussions, and on August 5, 2022, we prepared and sent Mastercard a request to produce certain categories of data and documents, including documentation on its policies and practices for determining compensation, level, and promotion, and data by gender and race relevant to the compensation, level, and promotion of Mastercard employees in Levels 4-10 during the liability period.

On September 30, 2022, the Parties entered into a tolling agreement and a confidentiality agreement respecting the provision of the information Plaintiffs had requested.

Over the ensuing months, the Parties exchanged substantial relevant information and data, including Mastercard's policy documents on employee compensation and promotion standards, and extensive data on employee demographics, job history, and compensation history for New York-based employees, including in Mastercard's Purchase and New York City offices.

As part of the Parties' pre-litigation settlement discussions, over the next several months, the Parties exchanged correspondence and engaged in numerous telephone conferences, in which the Parties discussed the strengths and weaknesses of the claims and defenses and the possibility of mediation.

To assist us in analyzing the procured data and policy documents, we retained expert consultants in Labor Economics and Industrial and Organizational (IO) Psychology. We first retained economic expert EconOne, who assisted in conducting numerous statistical analyses of Mastercard's compensation data, including the use of data controls and aggregation specifications asserted by Mastercard.

These analyses confirmed to us that female, Black, and Hispanic employees who perform substantially similar work in jobs that require similar skill, effort, and responsibility (i.e., the same job code) were paid less than their male and white counterparts, after controlling for standard variables in pay differentials noted by labor economists.

Specifically, Plaintiffs' economics expert found statistically significant gender and race disparities in average starting levels at hire, even after controlling for age (proxy for experience), year, and business unit.

Plaintiffs' expert ran multiple regression models using different iterations of controls, all of which revealed statistically significant compensation gaps.

Our analysis further revealed that female, Black, and Hispanic employees have suffered significant losses in compensation over their careers because Mastercard improperly assigned them at hire to lower job levels than men and/or white applicants, and the compensation effects of the level and career path assignments persisted throughout their career and affected promotion opportunities.

With the assistance of EconOne, we performed initial backpay damages calculations based on these analyses.

In addition, we retained a well-respected IO Psychologist, Dr. Nancy Tippins, to provide us with analyses on Mastercard's job architecture and hiring and promotion policies.

Dr. Tippins concluded previous job architecture validation studies by Mastercard should have been updated to account for the transformation of the workplace and that a more robust, current job analysis for jobs at Mastercard was needed.

Dr. Tippins also reviewed a sample of Mastercard's online job postings in the United States and concluded that they do not conform to IO best practices.

We further investigated Plaintiffs' claims of systemic gender and race disparities by conducting extensive interviews with at least 20 former and current Mastercard employees, including seven Black employees, three Hispanic employees, ten women of other races, and three men who are not class members but who had information regarding Mastercard's leveling, pay, and promotion practices. These employees worked across varying levels, geographies, offices, and job families, and their experiences confirmed the observed statistically significant pay disparities shown in the data.

The female employees and employees of color whom we interviewed repeatedly asserted that Mastercard substantially underpaid them relative to their experience, job duties, and peers' compensation.

Employees further reported to us that pay equity concerns were explicitly raised by the Black Employees Business Resource Group in writing throughout the Class Period.

Black Mastercard employees reported that they had complained to all levels of management that they were being paid less than their white peers and had requested increased transparency on pay equity and promotion practices.

In addition, we collected and reviewed over 200 current and historical job postings from Mastercard's website.

Using Mastercard's job architecture, each job posting was coded based on its presumed level and we analyzed the contents of the job postings (specifically the role description, duties, qualifications, and salary (excluding generic descriptions of Mastercard and information found on all postings), using a concept known as "cluster analysis."

The analysis revealed that there was a significant conceptual overlap across many Mastercard job postings, spanning numerous levels, which supported Dr. Tippins's conclusions that further professional job analyses were needed.

Based upon our investigation and our experts' analyses, we assessed the merits, risks, and potential damages associated with the class claims of gender and racial discrimination in pay, leveling, and promotions, and the Parties then agreed to mediate the class dispute.

In anticipation of mediation, Plaintiffs shared with Mastercard its statistical analyses and its findings, and Mastercard provided a response to Plaintiffs' claims, disputing their conclusions, and outlining its defenses.

Throughout the Parties' discussions, Mastercard disputed Plaintiff's assertions, pointing to its internal policies and practices, its own pay equity studies, and its work with respect to diversity, equity, and inclusion. Mastercard denies that there were or are any discriminatory differentials in compensation, leveling, or promotion, contends that it has complied at all times with applicable federal, state, and city laws, and disputes the facts alleged by Plaintiffs. Moreover, Mastercard retained its own labor economists and IO psychologists, who challenged the conclusions drawn by Plaintiffs' experts, finding no statistically significant disparities in pay for substantially similar work and validating Mastercard's job architecture. Further, Mastercard asserted that Plaintiffs' claims were not suitable for class or collective treatment.

On August 1, 2023, the Parties held an initial mediation session with Dina R. Jansenson, Esq., an experienced JAMS mediator of class discrimination lawsuits.

Following the first mediation session, which focused on a New York class, Mastercard agreed to negotiate a resolution on behalf of a nationwide class, and agreed to produce for all

United States-based employees during the relevant class periods the same kind of data it previously had produced for New York employees.

Plaintiffs' economic expert ran the same regression models previously provided to Mastercard, regressing for the same neutral factors used in the analysis of the New York claims.

As with the New York analysis, Plaintiffs' nationwide regression revealed that Mastercard pays female, Black, and Hispanic employees a statistically significant amount less than their male and white colleagues.

Plaintiffs provided Mastercard with these additional analyses.

Mastercard provided Plaintiffs and the mediator with its contrary analysis, which it contended showed no statistically significant difference in pay.

On March 25, 2024, the Parties participated in a second mediation session with Ms. Jansenson.

After the second mediation session, the Parties agreed to the general monetary terms of a class settlement.

Other terms of the settlement were negotiated over the ensuing months, including, but not limited to, the scope of the release, and the programmatic relief Mastercard would undertake.

We engaged in numerous calls with defense counsel and Ms. Jansenson to reach resolution.

On June 7, 2024, the Parties participated in a third mediation session with Ms. Jansenson in order to reach agreement on the remaining terms for the class settlement.

Ultimately, Ms. Jansenson issued a mediator's proposal, which the Parties subsequently accepted.

The Parties finalized the Settlement Stipulation on January 13, 2025.

At all times during the settlement negotiation process, negotiations were conducted at arm's length.

On January 14, Plaintiffs filed a Class and Collective Action Complaint against Defendant in this Court on behalf of themselves and others similarly-situated, alleging that Defendant violated federal, state, and local law in the application of its pay, leveling, and promotion practices.

Plaintiffs' Complaint seeks recovery of backpay wages, plus interest, other damages, attorneys' fees and costs, and injunctive relief.

**Class Representatives**

Plaintiffs seek a reasonable service payment, which is intended to compensate them for (a) the significant time and effort they spent on behalf of the Class with the prosecution of the claims, and the resulting value they have conferred to Settlement Class Members, and (b) the exposure and risk they incurred by taking a leadership role in a class action lawsuit, along with the risk of retaliation in the employment marketplace by employers that do not wish to employ someone associated with a lawsuit against an employer.

Plaintiffs were instrumental to the investigation and prosecution of this case. Plaintiffs participated in multiple phone calls to detail their experience at Mastercard and offered critical insight into Mastercard's pay practices, their alleged pay gap experience, denials of promotions, and other roadblocks female employees and Black and Latinx employees encounter at Mastercard.

Plaintiffs participated at key moments including by providing input to us in the course of mediation and subsequent negotiations, when details of the class settlement and programmatic relief were being finalized.

In sum, the $26,000,000 gross recovery would not have been possible without the Named Plaintiffs' efforts.

**Settlement and Settlement Administration**

Based on Mastercard's records as of January 10, 2025 there are approximately 7,500 total Class Members, including 1,200 who are members of both the gender and race classes.

The Parties will jointly select and appoint a third-party settlement administrator with experience administering these types of class settlements ("Settlement Administrator") to send the Notice of Class and Collective Action Settlement and Fairness Hearing (the "Notice") to Class Members, calculate settlement payments, distribute checks to Participating Class Members, and perform other tasks related to the administration of the Settlement.

The Notice to each respective Class Member shall inform them of the Settlement, the claims they are releasing, and the method used to calculate the payments to Class Members under the Settlement.

The Notice will advise Class Members of their right to exclude themselves from the settlement and how to do so. It will also advise Class Members that they have the right to object to the settlement and how to do so.

Class Members will have 30 days to object to or be excluded from the Settlement, or 20 days for Class Members whose notice forms are returned as undeliverable and re-mailed.

Plaintiffs will submit a separate application for attorneys' fees and Named Plaintiffs' Service Payments simultaneously with the motion for final approval of the Settlement.

Plaintiffs will submit a motion seeking Service Payments with the motion for final approval of the settlement.

**Exhibits**

Attached as **Exhibit A** is a true and correct copy of the Settlement Stipulation.

Attached as **Exhibit B** is a true and correct copy of the Notice.

*    *    *

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in New York, NY on January 14, 2025.

/s/  *Cara E. Greene*
Cara E. Greene

OUTTEN & GOLDEN LLP
Cara E. Greene
Adam T. Klein
Nantiya Ruan
Chauniqua D. Young
Shira Z. Gelfand
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

OUTTEN & GOLDEN LLP
Jennifer Davidson
1225 New York Ave NW Suite 1200,
Washington, DC 20005
Telephone: (202) 301-5509